IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFERY CARDONA, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 21-CV-4376 |
| | : | |
| BLANCHE CARNEY, *et al.*, | : | |
| Defendants. | : | |

## MEMORANDUM

SCHILLER, J.                                                      OCTOBER 20, 2021

Plaintiff Jeffery Cardona, a prisoner incarcerated at the Curran-Fromhold Correctional Facility ("CFCF"), is one of several prisoners who initiated this putative class action pursuant to 42 U.S.C. § 1983, challenging the constitutionality of various conditions at CFCF.  The Complaint in this case initially proceeded before Judge Rufe in Civil Action Number 21-1435. In a September 29, 2021 Memorandum and Order, Judge Rufe:  (1) dismissed as plaintiffs those prisoners who had either failed to pay the fees or moved to proceed *in forma pauperis* after having been given an opportunity to do so; (2) concluded that the plaintiffs, who were proceeding *pro se*, could not represent a class of prisoners and that, in any event, the class claims should be dismissed without prejudice as inadequately pled; and (3) concluded that the individual claims of the three remaining plaintiffs should be severed from each other.  *See Stokes v. Carney*, Civ. A. No. 21-1435, 2021 WL 4477185, at **6-9 (E.D. Pa. Sept. 29, 2021).

In accordance with her conclusion that joinder of the individual claims was improper, Judge Rufe directed severance of Cardona's claims (along with his Motion to Proceed *In Forma Pauperis* and Prisoner Account Statement) into a new lawsuit, which was docketed as the instant civil action and assigned to the undersigned.  *See id.* at *9 & n.5.  For the following reasons, the

Court will grant Cardona leave to proceed *in forma pauperis*, dismiss certain of his claims, and permit his excessive force claim to proceed at this time.

## I.      FACTUAL ALLEGATIONS

The Complaint in this case is partially styled as a class action based on allegations supporting class claims and the individualized declarations of six Plaintiffs, including Cardona. (*See* ECF No. 2.)  The Complaint names the following Defendants:  (1) O. Ford; (2) C/O Antwi; (3) Blanche Carney; and (4) Capt. Harmer.  (*Id.* at 2-4.)[1]  Carney is the Commissioner of the Philadelphia Department of Prisons and the other Defendants are employed at CFCF.  (*Id.* at 3-4.)  Page six of the Complaint lists six additional Defendants:  (1) C/O M. Friend; (2) Sgt. Brown; (3) "Oliver ___ H"; (4) Lt. Reid; (5) Sgt. John Doe; and (6) C/O Felts.  (*Id.* at 6.)  The Defendants are sued in their individual and official capacities.  (*Id.*)

Cardona, who was a convicted and sentenced inmate at the time of relevant events (*id.* at 5), asserts claims based on events that occurred in November 2020.  (*Id.* at 10.)  He alleges that he noticed other inmates looking at his naked body while he used the shower due to the lack of shower curtains.  (*Id.*)  Cardona spoke to Correctional Officer Felts and asked to speak to a supervisor about the shower issue and his concern that he was "housed in C.F.C.F. under quarantine and not transferred directly to P.A.D.O.C."  (*Id.*)  Cardona alleges that Felts rejected his request and assaulted him by "striking [him] with several blows which knocked [him] to the ground" and caused him to hit his head.  (*Id.* at 10-11.)  Felts allegedly continued to stomp and kick Cardona while he was on the ground until Cardona was unconscious.  (*Id.* at 11.)  Cardona claims he was then placed in solitary confinement without receiving medical attention and sent to A.1.3 without receiving a disciplinary hearing.  (*Id.*)  Cardona claims "[t]he conditions on A.1.3

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

are horrible, we are locked down 24 hours a day, no sheets or blanket exchange, no access to law library, no proper mental health assistance and the cells are always extremely cold." (*Id.*)

He alleges that his rights have been violated because he is a state prisoner "illegally housed" within the Philadelphia Prison System. (*Id.*) Cardona also alleges that his Eighth Amendment rights were violated because he did not receive medical treatment and that his due process rights were violated because he did not receive a disciplinary hearing. (*Id.*) The Complaint seeks class certification (which has already effectively been denied by Judge Rufe), $2 million in compensatory and punitive damages "for illegal placement in solitary confinement on A-1-3 during COVID 19 pandemic with no due process hearing" and "immediate release" from A-1-3. (*Id.* at 21.)

As noted above, the Complaint initially pursued class claims for relief, specifically "on behalf of [Plaintiffs] as well as any and all other similarly situated individuals incarcerated at CFCF and housed on A-1-3" for violation of their due process rights, excessive force, deliberate indifference and "collusion." (*Id.* at 4 & 6.) They alleged that "as a result of the customs, policies, practices and actions adopted and undertaken by" the Defendants, they were placed on a "segregation-detention unit," *i.e.*, A-1-3, "and subjected to punitive status without receiving a disciplinary hearing in violation of due process." (*Id.* at 6.) They also alleged that they were assaulted by correctional officers before they were housed on A-1-3 and subjected to unconstitutional conditions on the unit. (*Id.*) Although these claims were dismissed by Judge Rufe to the extent they were brought on behalf of the class, *Stokes*, 2021 WL 4477185, at *8, the Court repeats these allegations here because they provide context for Cardona's individual claims.

3

## II.     STANDARD OF REVIEW

The Court will grant Cardona leave to proceed *in forma pauperis* because it appears that he does not have the ability to pre-pay the fees to commence this civil action.[2]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Cardona is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.    DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

---

[2] However, as Cardona is a prisoner, he will be obligated to pay the filing fee in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

For the following reasons, the Court concludes that Cardona has stated an excessive force claim against Defendant Felts in his individual capacity but that he has not pled any other basis for a plausible claim at this time.

### A.  Official Capacity Claims

Cardona sued the Defendants in their individual and official capacities.  Official capacity claims are indistinguishable from claims against the entity that employs the officials, here the City of Philadelphia.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690, n. 55 (1978)).  So, to maintain a claim against the Defendants in their official capacity, Cardona must plead a basis for municipal liability.

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights.  *See Monell*, 436 U.S. at 694.  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was."  *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).  "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'"  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'"  *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  For a custom to be the proximate cause of an injury, a plaintiff must establish that the Defendant "had knowledge of similar unlawful conduct in the past, failed

to take precautions against future violations, and that its failure, at least in part, led to [the plaintiffs'] injury." *Id.* (internal quotations and alterations omitted).  In other words, "[c]ustom requires proof of knowledge and acquiescence by [a municipal] decisionmaker."[3] *McTernan*, 564 F.3d at 658; *see also Baker v. Monroe Twp.*, 50 F.3d 1186, 1191 (3d Cir. 1995) (to establish municipal liability, the plaintiffs "must show that a policymaker for the Township authorized policies that led to the violations or permitted practices that were so permanent and well settled as to establish acquiescence").

In analyzing the class claims raised in the Complaint, Judge Rufe made the following observations:

> Although the Complaint generally invokes the standard for municipal liability in support of the class claims, (*see* ECF No. 4 at 6), Plaintiffs do not identify a specific policy to house inmates on the punitive detention unit indefinitely without a hearing or a specific policy pertaining to the conditions in which they were held.  Rather, liberally construing their allegations, they appear to be asserting that there exists a custom of treating inmates in this manner because they were treated this way.  In support, they have provided six declarations from inmates (the Plaintiffs who are proceeding and those who are not) attesting to their placement on A-1-3 without a hearing.  Although most of the Plaintiffs claim they were not given an anticipated end date for their time on A-1-3, that was not universal — Stokes was informed he would be placed in punitive detention for fifteen days in June 2020, Duplessis was given a thirty-day sentence, and Williams was given a sixty-day sentence.  Each inmate's declaration contains similar generalized allegations about the conditions on A-1-3, *i.e.*, that the conditions on the unit are deplorable because they do not have access to a law library or sheet exchange and have been confined to their cells for 24-hour periods, sometimes for days.  Four of the declarations also generally allege that those inmates "notified" Carney of the "matter" or "matters."

> The Plaintiffs' somewhat similar experiences over the course of eight months do not support the existence of a plausible municipal custom to deny hearings to inmates housed on A-1-3 at CFCF that essentially operates with the force of law because they have not adequately alleged knowledge or acquiescence

---

[3] A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).  None of these legal theories appear to be relevant here.

attributable to the City.  Four of the Plaintiffs generally allege that they notified Carney of the matter or matters, without specifying the particular issues that they brought to her attention.  Their generalized allegations are insufficient to state a plausible basis for Carney's personal involvement in, knowledge of, or acquiescence in the constitutional violations alleged, which is fatal to their individual and official capacity claims raised on behalf of the class.  *See Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (*per curiam*) (defendants' alleged inappropriate responses to plaintiff's "later-filed grievances" were insufficient to establish those defendants' personal involvement in underlying wrongs); *Rode* [*v. Dellarciprete*, 845 F.2d 1195] at 1207 [(3d Cir. 1988)]*,* ("Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."); *Burk v. Crowe*, Civ. A. No. 19-5792, 2020 WL 42758, at *4 (E.D. Pa. Jan. 3, 2020) (plaintiff's "general allegation that he 'wrote to' Crowe, Cassidy, Budd, and Lagana 'when this happen[ed]' is too vague and undeveloped to state a plausible basis for liability against these individuals").

The same is true of Plaintiffs' class claims based on the conditions of A-1-3.  In addition, the generalized allegations about the conditions on A-1-3 are too vague to allege a plausible underlying constitutional violation.  Plaintiffs cite the general lack of access to a law library but there are no allegations that any of the prisoners suffered an actual injury by losing their ability to pursue a nonfrivolous claim.  *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (explaining that the right of access to the courts, "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court"); *O'Connell v. Williams*, 241 F. App'x 55, 57 (3d Cir. 2007) (*per curiam*) (holding that "[t]o state a claim for denial of access to courts based on an inadequate law library, a litigant must show with specificity that he was prevented from litigating a nonfrivolous underlying claim due to the allegedly inadequate facilities, and must seek a remedy for the denial of access which would not be available in another suit").  While denial of recreation and clean facilities may rise to the level of a constitutional violation, the conditions must be objectively serious and prison officials must have acted with deliberate indifference.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (to act with deliberate indifference, the prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"); *Stevenson* [*v. Carroll*], 495 F.3d [62] at 68 [(3d Cir. 2007)] (explaining that unconstitutional punishment involves objective and subjective components; the "objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind."); *Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (per curiam) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).  Plaintiffs allege that they are not able to regularly exchange their

sheets, some allege that they are locked in their cell for days at a time (although the frequency or duration of these periods is unclear), and some allude to inadequate mental health resources. However, Plaintiffs have offered at most only one or two sentences of undeveloped allegations about the conditions on A-1-3. They have not alleged sufficient facts about the extent, duration, and effect of those conditions from which this Court could infer that the challenged conditions were objectively serious, such that inmates housed on A-1-3 were deprived of a basic human need or that their health or safety was at risk. *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."); *Bell v. Wolfish*, 441 U.S. 520, 542 (1979) (indicating that conditions must result in "genuine privations and hardship over an extended period of time" to violate the Constitution). In other words, Plaintiffs have not only failed to allege a municipal policy or custom, but they have also failed to allege plausibly that the conditions on A-1-3 violated the Constitution.

*Stokes*, 2021 WL 4477185, at **7-8. The Court concurs with this cogent analysis and will dismiss Cardona's claims against the Defendants in their official capacities on that basis.

## B. Individual Claims

The Court construes Cardona's Complaint as attempting to raise excessive force claims based on the incident with Defendant Felts, due process based on Cardona's confinement at CFCF generally and on A.1.3 specifically, Eighth Amendment claims based on the conditions of A.1.3 and the alleged denial of adequate medical care for Cardona's injuries,[4] and potentially a claim for denial of access to the courts. As noted above, the Complaint names ten Defendants. "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode*, 845 F.2d at 1207. Additionally, there are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with

---

[4] The Eighth Amendment governs claims brought by convicted and sentenced inmates challenging their conditions of confinement. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).

deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*; *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

### 1. Excessive Force Claim Against Felts

Cardona primarily asserts an excessive force claim against Defendant Felts. To state an Eighth Amendment claim for excessive force, the core inquiry is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). Cardona alleges that when he asked to see a supervisor regarding several complaints, Defendant Felts responded by striking him with several blows, which knocked him to the ground causing him to hit his head, and that Felts "continuously stomped [him] and kick[ed] [him] until [he] became unconscious." (ECF No. 2 at 10-11.) These allegations are sufficient to state an excessive force claim against Felts. However, none of Cardona's allegations support an excessive force claim against any other Defendants, so this claim may only proceed against Felts.

### 2.  Remaining Claims Against the Remaining Defendants

The only Defendant discussed in Cardona's allegations is Defendant Felts.  The remaining Defendants, with the exception of Commissioner Carney, appear to have been named solely because they were involved in alleged constitutional violations being pursued by Jacquar Stokes, who was effectively the lead plaintiff in this case prior to severance.  *See Stokes*, 2021 WL 4477185, at **2-3 (describing Stokes's individualized allegations).  In other words, Cardona fails to allege that any of these Defendants were personally involved in the alleged violation of his rights or that they harmed him in any way.  Accordingly, Cardona has not stated a claim against these Defendants.  This means the Court will dismiss Cardona's remaining claims, *i.e.*, his due process claims, Eighth Amendment claims and any claims he was denied access to the courts, because Cardona has not adequately alleged how any of the named Defendants were responsible for those constitutional violations, including Felts.

### IV.    CONCLUSION

For the foregoing reasons, the Court will grant Cardona leave to proceed *in forma pauperis* and dismiss all of his claims with the exception of his excessive force claim against Defendant Felts in his individual capacity.  Cardona will be given the option of proceeding at this time on his remaining claim or filing a comprehensive amended complaint.  An appropriate Order follows, which in part provides further guidance to Cardona about his options for proceeding.

BY THE COURT:

**BERLE M. SCHILLER, J.**

10